IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

CHRISTOPHER Y. MEEK,        )
Individually and On Behalf of All Others )
Similarly Situated,                    )
                                    )
           Plaintiff,       )
                                    )
      v.                       )     Case No. 19-00472-CV-W-BP
                                    )
KANSAS CITY LIFE INSURANCE    )
COMPANY,                       )
                                    )
          Defendant.     )

## ORDER ON POSTTRIAL MOTIONS

This lawsuit presents claims that Defendant—an insurance company—improperly calculated the rate for the cost of insurance (the "COI Rate"), resulting in improper and excessive charges for cost of insurance (the "COI charge") under universal life insurance policies (the "policies"). A trial was conducted the week of May 22, 2023, and the Court subsequently entered judgment. Now pending are four posttrial motions. For the reasons discussed below:

- Defendant's Motion for Decertification of the Class and to Alter or Amend the Judgment, (Doc. 335), is **DENIED**;

- Defendant's Renewed Motion for Judgment as a Matter of Law on Count I, (Doc. 336), is **DENIED**;

- Plaintiff's Motion for a New Trial or, in the Alternative, Motion for Additur, (Doc. 333), is **DENIED**; and

- Plaintiff's Motion to Alter or Amend Judgment, (Doc. 334), is **GRANTED**.

## I. BACKGROUND

The Court starts with a summary of the claims asserted in Plaintiff's Amended Complaint. As relevant here:

- Count I alleges Defendant breached the policies by considering factors other than the policyholders' age, sex, and risk class and its own expectations as to future mortality experience when calculating the COI Rate;

- Count II alleges Defendant breached the policies by deducting expense charges in excess of the amount allowed by the policies; and

- Count III alleges Defendant breached the policies by failing to apply its updated mortality expectations when calculating the COI Rate.

(*See* Doc. 8.)

In February 2022, the Court granted in part Plaintiff's Motion for Class Certification. As relevant here, it determined Kansas law governs (1) Plaintiff's claims and (2) the statute of limitations. (Doc. 136, pp. 16, 22-23.)[1] Based on various determinations, the Court certified a class on Counts I through III consisting of individuals who, *inter alia*, purchased certain policies issued by Defendant that were active on or after January 1, 2002. (Doc. 136, p. 25.)

In March 2023, the Court granted in part the parties' separate motions for summary judgment. It held that, under Kansas law, the statute of limitations for Counts I through III was five years and found all breaches occurring within five years of the suit's filing (June 18, 2019) were timely. (Doc. 243, pp. 6-9.) The Court further explained that, in certain circumstances, Kansas will equitably estop a defendant from asserting the statute of limitations as a defense but determined the issue could not be decided based on the arguments and citations to the Record presented by the parties. (Doc. 243, pp. 9-11.)

After discussing the statute of limitations, the Court found that, although the policies limited Defendant to considering non-mortality factors when setting the COI rate, it had considered

---

[1] All page numbers are those generated by the Court's CM/ECF system.

improper factors (including expenses and profits). (Doc. 243, pp. 12-16.) These determinations granted Plaintiff summary judgment on liability with respect to Counts I and II. The Court then determined Defendant was required to use its then-current expectations as to future mortality experience when setting the COI rate but found factual disputes precluded summary judgment on this claim. (Doc. 243, pp. 16-17.)

Shortly after the summary judgment order was issued, the Court participated in a telephone conference with the parties. Thereafter, the parties submitted supplemental briefs. Among other things, they agreed the facts relevant to equitable estoppel were to be determined by the Court and not the jury. (Doc. 253, pp. 14-15; Doc. 254, pp. 18-19.)

At the pretrial conference, the Court indicated it needed to hear evidence before it could rule on the issue of equitable estoppel and decided the appropriate course was to proceed to trial and allow the parties to present any additional evidence related solely to equitable estoppel outside the jury's hearing. (Doc. 292, p. 10.) To avoid the need for a second trial, the Court also proposed having the jury return a verdict regarding damages for two time periods based on the application (or not) of equitable estoppel. (Doc. 292, pp. 10-11.)

At trial, the Court largely adopted Plaintiff's proposed approach with respect to the verdict directing instructions, resulting in Count III being submitted as a subpart of Count I. The first Verdict Director, (Doc. 309, p. 23 (Instruction No. 18)), told the jury that Defendant breached the policies if it "(1) considered factors other than age, sex, and risk class and its expectations as to future mortality experience when setting the COI rate" or "(2) failed to use . . . its then-current mortality rates when setting the monthly COI charge." The jury was then told that, while it had previously been determined Defendant considered impermissible factors when setting the COI rate, it had not been determined whether Defendant failed to apply its then-current mortality rates.

The jury was also told it had not been determined whether the class suffered damages. On the corresponding Verdict Form, (Doc. 311, pp. 1-2 (Verdict Form A)), the jury was directed to determine (for the two separate periods) damages for Defendant's consideration of impermissible factors. The jury was also directed to indicate whether it found Defendant failed to apply its then-current mortality rates by inserting the amount of damages; if it found Defendant did not breach the policies in this manner, it was to leave the line for damages blank.

The second Verdict Director, (Doc. 309, p. 24 (Instruction No. 19)), addressed Count II. The jury was told it had been determined that "Defendant cannot consider expenses when setting the COI rate" but that it had done so. The jury was instructed to "determine whether Plaintiffs were damaged by Defendant's consideration of expenses and, if so, the amount of damages." The corresponding Verdict Form, (Doc. 311, p. 3 (Verdict Form B)), included lines for two separate time periods.

As to Count I, the jury, for each time period, awarded damages based on Defendant's consideration of improper factors in setting the COI rate. (Doc. 311, pp. 1-2.) As to Count III, it found Defendant did not breach the policies by failing to apply its then-current mortality rates. (Doc. 311, p. 2.) Finally, as to Count II, the jury determined damages for Defendant's consideration of expenses were zero. (Doc. 311, pp. 2-3.)

In an Order issued after trial, (Doc. 329), the Court concluded individualized issues related to reliance (and corresponding manageability concerns) precluded deciding the equitable estoppel issue on a class-wide basis. Consequently, the Court partially decertified the class, limiting its temporal scope to those who held a relevant policy within five years prior to suit, and entered judgment for the newly defined class based on the jury's verdict for that period. Then, to minimize prejudice to the class members, all claims based on charges incurred before the limitation period

4

commenced were dismissed without prejudice. Plaintiff sought reconsideration of this decision, but the Court adhered to its prior ruling. (Doc. 351.)

The parties have now filed various posttrial motions. The Court resolves the issues below, setting out additional facts as necessary.

## II. DISCUSSION

### A. Defendant's Motions

At the outset, the Court notes the Eighth Circuit adjudicated a similar case in *Vogt v. State Farm Life Insurance Co.*, 963 F.3d 753 (8th Cir. 2020). There, an insurance policy stated monthly COI rates "are ***based on the Insured's age on the policy anniversary, sex, and applicable rate class***." *Id.* at 761 (emphasis in original) (quotation omitted). A policyholder sued, asserting, in part, a breach of contract claim based on State Farm's consideration of non-mortality factors. *Id.* The district court, at summary judgment, determined State Farm was limited to considering factors listed in the policy. *Id.* at 762. Thereafter, a class was certified, and, before trial, the district court found the plaintiff had established liability for breach contract, thus limiting the jury trial to the issue of damages. *Id.* The jury awarded the class approximately $35 million. *Id.* State Farm's posttrial motions were denied, *id.*, and its arguments were rejected on appeal, *id.* at 763-75.

While many of the contentions presented by Defendant are similar to those rejected in *Vogt*, Defendant often fails to discuss that case, and, when it does, fails to point to meaningful distinctions or establish a different result is necessary. Thus, *Vogt* will play a prominent role in the Court's analysis.

### 1. Motion for Decertification and to Alter or Amend the Judgment, (Doc. 335)

"[A]fter initial certification, the duty remains with the district court to assure that the class continues to be certifiable throughout the litigation[.]" *In re Target Corp. Customer Data Sec.*

5

*Breach Litig.*, 847 F.3d 608, 612 (8th Cir. 2017), *amended*, 855 F.3d 913 (8th Cir. 2017). A class can be certified if, among other things, (1) there are questions of law or fact common to the class and (2) the common questions of law or fact predominate over individual questions. *See* Fed. R. Civ. P. 23(a)(2), 23(b)(3).

Defendant argues decertification of the class is appropriate because (1) individualized damages issues predominate; (2) many class members did not suffer damages; and (3) intra-class conflicts exist. It also asks the Court to amend the judgment to reflect the class's decertification. However, the Court does not believe decertification is appropriate; it addresses Defendant's arguments below.

### i. *Individual Damages Issues*

Although common issues must predominate for a class to be certified, the existence of some individual issues does not prevent certification:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted). Certification is improper only when individual issues "overwhelm" the common issues, *Ebert v. General Mills, Inc.*, 823 F.3d 472, 478-79 (8th Cir. 2016) (quotation omitted), and some individual issues, including those relating to damages, are permissible, *see Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 833 (8th Cir. 2016) (finding a class action was properly certified despite "individualized inquiries for determining the rate of compensation for each employee").

As the Court previously held, many common issues—such as the meaning of the policies, what statute of limitations applies, and how Defendant calculated its COI rates and COI charges—

6

exist. (*See, e.g.*, Doc. 136, pp. 23-25.) These are "central issues . . . common to the class" as described in *Tyson Foods*, and the Court must weigh any individual issues—including damages—against them; the mere presence of individual inquiries does not mean that predominance is lacking or that the class must be decertified.

At trial, Plaintiff established damages with expert testimony from Scott Witt, who first determined the COI rate as defined by the policies (i.e., considering the policyholder's age, sex, and risk class and Defendant's expectations as to future mortality experience) by using internal mortality rates supplied by Defendant. Witt then calculated the allegedly proper COI charge and compared it to the COI charge Defendant deducted from policyholders' cash values each month. To arrive at a final damages figure, Witt calculated the running total Defendant overcharged the class members, plus interest. The Court previously held this model allowed damages to be effectively addressed in a class-wide manner. (*E.g.*, Doc. 136, pp. 5-14).

Defendant first contends that, because Witt calculated each class member's damage and then aggregated those damages to determine the total damage to the class, individual damages issues predominate. The Court has previously explained that, for purposes of class certification, a single formula which can be applied to ascertain damages for all class members is sufficient. (Doc. 136, p. 12 n.6.) Here, Witt used the same model to determine damages for each class member. The mere existence of some individual inputs (which were easily ascertained from Defendant's records) does not defeat class certification, especially given the many common questions present in this suit.

Defendant also argues another individual factor—how policyholders interacted with their policy—is relevant because damages must account for the value of the death benefit provided by the policies. According to Defendant, policyholders sustained damage only if (1) they made

additional payments to maintain life insurance or (2) their life insurance lapsed before they intended; conversely, policyholders were not damaged if they maintained coverage for as long as they intended (e.g., until their children became adults or, in certain circumstances, until the death benefit was paid) despite Defendant's overcharges. Defendant argues Witt's model was insufficient because it failed to account for these considerations.

The Court disagrees. If policyholders made additional payments or their policy lapsed earlier than intended, the extra amount paid (or the amount one needed to pay to continue coverage) was the overcharge. Similarly, if policyholders had coverage for as long as intended, they could have accomplished their goal while paying less. Thus, in any circumstance identified by Defendant, the overcharge constitutes damage as measured by Witt's model. Thus, the Court concludes that how policyholders interacted with their policy is not relevant to the calculation of damages.

This conclusion is further bolstered by the fact that policyholders, in various circumstances, can obtain the cash value of their policy. For example, one death benefit option pays out the cash value, (Doc. 67-2, p. 7), and policyholders can surrender their policy for the cash value at any time, (Doc. 67-2, p. 11.) Thus, the question of how policyholders interacted with their policy is not an important individual determination requiring decertification.[2]

Defendant's argument relies heavily on *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). There, the district court certified one out of four theories for class-action treatment, but the plaintiff's damages model accounted for harm under all four of its theories. *Id.* at 35-36. The Supreme Court rejected this model, noting that the damages theory must be tied to the theory of

---

[2] Notably, in *Vogt*, the Eighth Circuit found the plaintiff's "damages models, which measure the lost account value for all policyholders during the period in which they held the policies, provide the most reasonable basis for" damages. 963 F.3d at 770. The same rationale applies here.

liability. *Id.* at 36. Defendant does not argue the class was awarded damages for claims other than those that were certified, and, as this Order (and prior Orders, (*e.g.*, Doc. 136, pp. 7-12)) explains, Plaintiff's damages theory is sufficiently tied to the breaches he alleged.

Defendant also relies on *Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616 (8th Cir. 2021), which involved the practices of a stock market broker. The Eighth Circuit ultimately found damages could not be determined on a class-wide basis, noting that relevant market information could not be pulled from a single source and that each individual's trading strategy was relevant to damages. *Id.* at 622-23. In contrast, the inputs for Witt's model are kept by Defendant, and, as explained above, Defendant's argument that an individual's interaction with his or her policy affects damages is unpersuasive. The Court adheres to its prior ruling that individual damages issues do not preclude class certification.

### ii. *Lack of Damages for Some Class Members*

Defendant next argues damages cannot be measured on a class-wide basis because some class members were damaged while others were not. In some instances, the COI rate used by Defendant was lower than a COI rate based only on mortality, resulting in an undercharge. In turn, some class members sustained no damage because, after all monthly charges were considered, they were not overcharged. Additionally, Defendant argues some policyholders who chose one type of death benefit—Option A—and who have already passed away were not damaged. Option A provides that, upon a policyholder's death, only a death benefit is paid; the cash value is not recovered. (Doc. 67-2, p. 7.) Defendant asserts that, if the death benefit has been paid, no damages were incurred because the cash value was not recouped and any overcharges became irrelevant.

As a preliminary matter, the Court notes Defendant's Option A argument is similar to its contention that damages must account for the value of the death benefit provided by the policies

9

and, thus, is rejected for the same reasons. But, even if these (and other) class members suffered no damages, decertification is not necessary. As explained above, damages could be measured class-wide because Witt used the same formula to calculate the harm to each class member. The fact that the damages formula produced different results (e.g., damages for some class members but not others) does not alter this conclusion. (*See* Doc. 136, p. 12 n.6 ("[A]s long as damages can be calculated for each class member through the same formula, variation in the result of the formula does not defeat predominance.").)

Defendant also argues that, if a class member was not damaged, he or she lacks standing. With respect to class actions, "[e]very class member must have Article III standing in order to recover individual damages," and "[p]laintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Here, the class alleged they lost money due to Defendant's breach of contract, which is sufficient to establish standing. *See Czyewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017). The failure to prove damages is a merits, rather than standing, issue, *Vogt*, 963 F.3d at 766; *see also Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016), and, even absent financial injury, the legal injury caused by Defendant's breach of contract, creates standing. *Vogt*, 963 F.3d at 766.[3]

---

[3] Defendant argues that, under recent Supreme Court rulings, a breach of contract alone cannot establish standing, citing a Seventh Circuit case that has held as such. (Doc. 349, p. 8 (citing *Dinerstein v. Google, LLC*, 73 F.4th 502, 518-22 (7th Cir. 2023) (discussing *TransUnion* and *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016))).) The Court is unpersuaded. Eighth Circuit precedent remains unchanged on this point. Further, *TransUnion* and *Spokeo* addressed when an injury sufficient to establish standing arose due to violation of a federal statute. *TransUnion*, 141 S. Ct. at 2200; *Spokeo*, 578 U.S. at 333. The Court questions whether this analysis can be applied to common law causes of action. Further, Kansas law generally provides that nominal damages are available for breach of contract, *see Freeto Const. Co. v. Am. Hoist & Derrick Co.*, 457 P.2d 1, 5-6 (Kan. 1969), which suggests that, even absent actual harm, standing exists. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801-02 (2021) ("Because nominal damages were available at common law in analogous circumstances, we conclude that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right.").

### iii. Intra-Class Conflicts

Finally, Defendant argues the class must be decertified due to the existence of intra-class conflicts. "To forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." *Id.* at 767 (cleaned up).

Defendant argues intra-class conflicts exist because Plaintiff's policy interpretation will impact policyholders differently. For example, it asserts older policyholders will have higher COI rates than younger policyholders, and smokers will have higher COI rates than non-smokers. Defendant's argument is premised on what Defendant will do with COI rates in the future. (Doc. 335, p. 19.) As the Court has noted, this is irrelevant to the claims submitted here, which deal only with retrospective damages: "At worst, a putative class member for whom the COI Defendant actually charged was consistently less than a mortality-based COI would be entitled to no damages, but this does not create a conflict among the class." (Doc. 136, p. 20); *see also Vogt*, 963 F.3d at 767 ("This purported conflict is entirely speculative and is insufficient to render class certification inappropriate because it relies on nothing more than conjecture about how this lawsuit will affect State Farm's future dealings with current policyholders.") To the extent Defendant argues policyholders may prefer different interpretations of the policies, the Court continues to hold "there can be no serious doubt that an interpretation limiting what Defendant may consider is more favorable to Plaintiff than an interpretation containing no limits." (Doc. 243, p. 15.) The Court finds intra-class conflicts do not prevent certification.

### 2. Renewed Motion for Judgment as a Matter of Law on Count I, (Doc. 336)

Defendant, pursuant to Federal Rule of Civil Procedure 50(b), seeks judgment as a matter of law on Count I. In considering the motion, the Court cannot weigh the evidence; instead, it must construe the evidence in the light most favorable to the jury's verdict. *E.g.*, *Letterman v.*

11

*Does*, 859 F.3d 1120, 1124 (8th Cir. 2017). "Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party." *Id.* (quotation omitted). Defendant argues it is entitled to judgment as a matter of law because (1) under a proper interpretation of the policies, there is no breach and (2) Plaintiff did not produce sufficient evidence of damages.[4]

### i.    *Policy Interpretation*

Defendant posits that, under a proper interpretation of the policies, it did not commit a breach and, thus, should be awarded judgment as a matter of law. The Court previously interpreted the policies, noting the main issue was the meaning of the phrase "based on." (Doc. 243, p. 12.) Plaintiff argued the phrase implied exclusivity while Defendant argued it did not, and the Court concluded:

> Plaintiff's interpretation is the better one; it is more natural and follows the rule of construction *(expressio unius est exclusio alterius)* that when a contract contains a list of items, unlisted items (particularly those of a different character from those on the list) are generally not included. *E.g.*, *Metropolitan Life Ins. Co. v. Strnad*, 876 P.2d 1362, 1365-66 (Kan. 1994).
>
> Here, the Policy states the COI rate is determined by Defendant based on its expectations as to future mortality experience and specifically includes age, sex, and risk class. An ordinary insured would not expect the COI to be based on other factors – or at least, would expect that other factors on which the COI rate is based would be related to Defendant's expectations regarding future mortality and included as part of the "r[isk] class."

---

[4] Plaintiff asserts Defendant's argument regarding policy interpretation and some arguments regarding damages cannot be considered because they were not raised in Defendant's initial Motion for Judgment as a Matter of law. *See Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co.*, 381 F.3d 811, 821 (8th Cir. 2004). "But a pre-verdict Rule 50(a) motion does not require technical precision, and therefore grounds that are inextricably intertwined to those in the Rule 50(a) motion may be raised in a post-trial Rule 50(b) motion." *Hagen v. Siouxland Obstetrics & Gynecology, PC*, 799 F.3d 922, 928 (8th Cir. 2015) (quotations omitted). In its initial Motion, Defendant discussed aspects of policy interpretation and challenged Plaintiff's damages calculation, (Doc. 316, pp. 237-39 (Trial Tr., pp. 370-72)), so the Court finds these arguments can be considered.

Additionally, Defendant contends it is entitled to judgment as a matter of law because class members who were not damaged lack standing. For the reasons stated above, the Court disagrees. Moreover, if Plaintiff lacks standing, the proper recourse is dismissal without prejudice, not judgment for Defendant.

(Doc. 243, pp. 13-14.) The Court then held Defendant's contrary interpretation, at best, made the phrase ambiguous—which meant Plaintiff's interpretation prevailed because it was more beneficial to the insureds. (Doc. 243, pp. 14-15.) It ultimately held "[t]he policy does not permit Defendant to consider non-mortality factors in setting the COI rate[.]" (Doc. 243, p. 16.)[5]

Defendant primarily contends "based on" does not imply exclusivity because that term is used multiple times in the policies and is followed by different considerations. It also cites other policy provisions, arguing they establish "based on" was not used in an exclusive sense. (Doc. 336, pp. 10-11.) The Court is unpersuaded. The instances of "based on" are followed by "age, sex, and risk class"—which are recognized mortality factors, (Doc. 136, p. 2)—a mortality table, and Defendant's "expectations as to mortality experience." (Doc. 67-2, p. 5.) Because only mortality considerations are listed, a reasonable insured would not expect Defendant to use non-mortality factors in setting the COI rate. *See also Vogt*, 963 F.3d at 763-64 ("[T]he phrase 'based on' is at least ambiguous because a person of ordinary intelligence purchasing an insurance policy would not read the provision and understand that where the policy states that the COI fees will be calculated 'based on' listed mortality factors that the insurer would also be free to incorporate other, unlisted factors into this calculation.")

Defendant also asserts the Court's interpretation is flawed because (1) age, sex, and risk class cannot be tied to a numerical value without actuarial judgment and (2) it is common sense that profit and expenses will be considered by Defendant. As to the first point, it may be (and is quite likely) that actuarial judgment is required to determined how the COI rate is affected by a

---

[5] Defendant repeatedly suggests the Court modified its interpretation of the policies as the litigation progressed by including expectations as to future mortality as a fourth factor. But, as the above discussion demonstrates and as Court has previously explained, the summary judgment ruling clearly mentioned expectations as to future mortality experience. (Doc 316, p. 240 (Trial Tr., p. 373); *see also* (Doc. 317, p. 219 (Trial Tr., 596) (stating the Court clarified, rather than modified, the summary judgment ruling).)

person's age, sex, and risk class. But the Court's ruling merely limits Defendant to considering those factors; the fact actuarial judgment is required does not suggest other factors (such as profit and expenses) may be considered. Regarding the second point, the Court does not agree that, when factors—all of which relate to mortality—are specifically identified, "common sense" dictates other unlisted and unrelated factors will be used.[6] The Court adheres to its prior policy interpretation.

### ii. *Insufficient Evidence of Damages*

Defendant next argues it is entitled to judgment as a matter of law because Plaintiff did not produce sufficient evidence of damages. Many of Defendant's arguments were addressed above, and the Court will not repeat its discussion.

Defendant argues that Witt should have calculated a rate based solely on age, sex, and risk class to properly formulate damages and that his model did not track Plaintiff's theory because the rates he used included other factors. Defendant's argument ignores policy language stating Defendant was to set COI rates based upon its expectations as to future mortality experience. The Court has previously held Witt was not required to create his own rate, "given Plaintiff's theory that Defendant could set COI rates based upon its internal expectations but was limited to consideration of mortality factors." (Doc. 244, p. 9.) Further, under Plaintiff's theory, the

---

[6] In interpreting the policies, the Court explained:

> Defendant's ability to find cases rejecting this interpretation do not resolve the matter. In applying Missouri law (which is similar to Kansas law), the Eighth Circuit observed: "That several courts have examined the issue in very similar circumstances and have reached differing conclusions supports the conclusion that the phrase is ambiguous." *Vogt*, 963 F.3d at 764.

(Doc. 243, p. 15 n.16.) Defendant argues this rationale is inappropriate under Kansas Law, citing *Speth v. State Farm Fire & Cas. Co.*, 35 P.3d 860 (Kan. 2001). But, as the Court explained, Kansas law holds "[a]n ambiguity arises only if the language at issue is subject to two or more reasonable interpretations and its proper meaning is uncertain. [*Speth*, 35 P.3d at 862] (cleaned up)." (Doc. 243, p. 13 (second citation omitted).) The Court has determined Plaintiff's policy interpretation is reasonable. Thus, even if Defendant established another interpretation (such as those from other cases) was reasonable, it, at most, established an ambiguity, which leads to a ruling in favor of Plaintiff.

"expectations as to future mortality experience" language established any mortality factor can be considered. Witt testified that additional factors included in the rates were mortality factors, (*see, e.g.*, Doc. 316, pp. 161, 187-88 (Trial Tr., p. 294, 320-21)), so consideration of those additional factors was appropriate.

Defendant further contends Witt improperly used the same model for all products, despite differences in mortality rates and policy language. But using the same model does not indicate a failure to use distinct mortality rates. Witt's model reflects different rates were used for different products. (*See, e.g.*, Doc. 316, pp. 70-72 (Trial Tr., pp. 203-05 (discussing Exhibit 55A)).) And, even if some policies had different listed factors, they all stated Defendant was to use its expectations as to future mortality experience; again, Plaintiff asserted this language rendered any other differences immaterial. For these reasons, Plaintiff introduced sufficient evidence of damages at trial.[7]

## B. Plaintiff's Motions

### 1. Motion for New Trial or, in the Alternative, for Additur, (Doc. 333.)

Plaintiff seeks a new trial. A judge has the discretion to grant a new trial "when the outcome is against the great weight of the evidence so as to constitute a miscarriage of justice." *Bank of Am., N.A. v. JB Hanna, LLC*, 766 F.3d 841, 851 (8th Cir. 2014). "In making this determination, the district court can rely on its own reading of the evidence—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 459 (8th Cir. 2016) (quotations omitted).

> However, the court is not simply to substitute its judgment for the jury's, granting a new trial whenever it would find differently than the jury has. The court should

---

[7] Defendant briefly suggests class members who were not damaged will obtain a windfall. Witt, however, accounted for periods in which class members did not suffer damages, (*see, e.g.*, (Doc. 316, p. 107 (Trial Tr., p. 240).)

reject a jury's verdict only where . . . the court is left with a definite and firm
conviction that the jury has erred.

*Ryan v. McDonough Power Equip., Inc.*, 734 F.2d 385, 387 (8th Cir. 1984) (quotations and
citations omitted); *see also Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 869 (8th Cir.
2011). Additionally, a new trial should be granted if there is an instructional error that "misled the
jury or had a probable effect on a jury's verdict," *Vaidyanathan v. Seagate US LLC*, 691 F.3d 972,
978 (8th Cir. 2012) (quotation omitted), or if there was an evidentiary error that affected a party's
substantial rights in that a new trial would likely produce a different result, *American Family Mut.
Ins. Co. v. Graham*, 792 F.3d 951, 957 (8th Cir. 2015).

Plaintiff argues (1) the jury's verdict was not supported by substantial evidence and (2) a
new trial is warranted because Defendant acted improperly during trial. While advancing these
contentions, Plaintiff also challenges some evidentiary rulings and a portion of the jury
instructions.

### i.    Sufficiency of the Evidence

Plaintiff first challenges the amount the jury awarded for Defendant's consideration of
non-mortality factors. As explained above, the jury evaluated damages for two time periods, one
shorter and one longer. After trial, the Court entered judgment for the jury's finding on the shorter
time period. Plaintiff then sought reconsideration, and the Court adhered to its decision. Plaintiff's
first argument is specifically limited to the longer time period, (Doc. 333, pp. 21-25; Doc. 347, p.
3 n.1), and is therefore irrelevant.

Regardless, his contention is unavailing. Generally, Plaintiff asserts the jury should have
awarded roughly $15 million because, for this portion of damages, the COI rate used by Witt was

16

a pricing mortality rate and its applicability was not disputed.[8]  Even if this is true, the jury was not required to wholly adopt any part of Witt's damages figure.  (*See, e.g.*, Doc. 309, p. 18 (Instruction 13) ("You may believe all of what a witness said, or only part of it, or none of it.").)  Additionally, the $15 million amount was partially based on Defendant's consideration of expenses.  (*See* Doc. 316, pp. 41-42 (Trial Tr., pp. 174-75) (opining total damages were roughly $18 million, with approximately $10.5 million attributable to inclusion of expenses).)  But the jury found Defendant's consideration of expenses did not cause damage, which necessarily lowered the amount of damages.  Therefore, contrary to Plaintiff's argument, the jury, for the longer time period, was not required to award approximately $15 million for Defendant's consideration of non-mortality factors.[9]

Next, Plaintiff attacks the jury's determination that Defendant did not fail to use its then-current mortality rates when setting the monthly COI charge.  He points to (1) the testimony of David Metzler, who stated that mortality had generally improved and that Defendant's pricing mortality improved in 2005; (2) a 1999 mortality study that states pricing mortality improved; and (3) studies showing non-pricing mortality rates improved. (Doc. 333, p. 26.)  Initially, to the extent Plaintiff relies on *non-pricing* mortality rates, Defendant presented evidence such rates could not be used establish improvement in *pricing* mortality rates, (*see, e.g.*, Doc. 317, pp. 107-09 (Trial Tr. 484-86).)  In any event, Defendant introduced evidence that mortality had not improved over time.  For example, Aaron Bush testified that many factors contribute to whether mortality has

---

[8] Plaintiff briefly argues he should have been permitted to introduce a calculation performed by Mark Milton, one of Defendant's experts, which used Witt's model, removed rates other than pricing mortality rates, and reached a similar damages number.  (*See* Doc. 254-1 (Milton's calculation).)  But, as the Court noted, Witt provided essentially the same information in a different manner by testifying the total damages figure was roughly $18 million, while approximately $2.7 million was attributable to mortality improvement.  (Doc. 317, pp. 114-16 (Trial Tr., 491-93).)

[9] Because Plaintiff seeks additur only for this claim and time period, (Doc. 333, pp. 31-32; Doc. 347, p. 11), the request is denied for the same reasons.

improved and that he could not broadly say mortality had improved. (Doc. 317, pp. 34-35 (Trial Tr., pp. 411-12).) Mark Milton also testified there had not been a material improvement in mortality. (Doc. 317, pp. 111-12 (Trial Tr., p. 488-89).) Thus, there was sufficient evidence to support the jury's verdict.

Finally, Plaintiff attacks the jury's verdict that Defendant's consideration of expenses resulted in no damage.[10] To ascertain the amount of damages attributable to expenses, Witt analyzed pricing runs performed by Defendant, "which separately identified gains from mortality, from expenses, from interest, and from some other less material sources." (Doc. 316, pp. 111-12 (Trial Tr., pp. 244-45).) Defendant, in disputing Witt's calculation, noted the evidence used by Witt was derived from eight out of 23 class policies. (Doc. 317, pp. 158-59 (Trial Tr., pp. 535-36.) Plaintiff contends this attack was impermissible because Defendant produced (and data only existed) for those eight policies. He further argues this impacted the jury because, during deliberations, it asked whether there was evidence for all 23 products or a lesser number. (Doc. 310, p. 5.)

Plaintiff did not object to this evidence and argument during trial. Regardless, other valid reasons can explain the jury's verdict. For example, the jury was not required to accept Witt's testimony, and Witt's expense calculation was attacked on other grounds. (*See* Doc. 317, pp. 160-61 (Trial Tr., pp. 537-38.).) The Court also does not believe the jury's question demonstrates it was improperly swayed by this argument. As indicated above, the jury's question was not limited to evidence regarding expenses; instead, it asked whether all 23 products were taken into account, and the Court correctly stated they were. (Doc. 310, p. 5.)

---

[10] Plaintiff suggests that, because Count I subsumed Count II and damages were awarded under Count I, there must have been damage under Count II. The Court disagrees. Multiple non-mortality factors, including profits, were included in the COI rate, so an award of damages on Count I does not mean those damages were based on improper consideration of expenses.

Plaintiff also argues he was prejudiced by the jury instructions, arguing they should have stated Defendant "considered and included" improper factors, rather than Defendant "considered" improper factors. But the Court never determined damages were required. The jury was tasked with deciding this issue. (Doc. 309, pp. 23-24 (Instructions 18 & 19).) Because "included" could improperly suggest damages were required, it was appropriate not to use that term. This ruling is further supported by the fact that class members were sometimes undercharged despite consideration of improper factors.

For these reasons, the jury's verdict was supported by sufficient evidence.[11]

## ii.    *Improper Conduct by Defendant*

Plaintiff argues alleged misconduct by Defendant entitles him to a new trial. First, he contends Defendant improperly argued only age, sex, and risk class could be considered when setting the COI rate, failing to account for the policies' mention of Defendant's expectations as to future mortality experience. Plaintiff references Defendant's opening statement, Defendant's closing argument, and testimony by certain witness; to help prove his point, he notes the Court sustained some objections on this ground. (Doc. 333, p. 29.)

The Court finds Plaintiff's argument unpersuasive. The jury was instructed that opening statements and closing arguments are not evidence. (Doc. 309, p. 13 (Instruction 8).) Plaintiff also presented evidence regarding the "expectations as to future mortality experience language," and Witt testified about the impact and importance of this factor. (*See, e.g.*, Doc. 316, pp. 44, 81, 131-32, 159 (Trial Tr., 177, 214, 264-65, 292).) Most importantly, the jury instructions clearly indicated Defendant was "limited to considering an insured's age, sex, and risk class, along with

---

[11] Plaintiff also asserts the jury acted based on passion as well as prejudice and reached its verdict due to a compromise. But various evidence supported the jury's verdict, so the Court disagrees. A jury's verdict is not to be deemed the product of compromise, prejudice, or confusion just because it is less than what the plaintiff sought.

its expectations as to future mortality experience, when setting the COI rate." (Doc. 309, p. 23 (Instruction 18).) The Instructions thus correctly stated the law.[12]

### 2. Motion to Alter or Amend Judgment, (Doc. 336)

Plaintiff contends that, if his other posttrial motions are denied, the Court should alter or amend the judgment to include postjudgment interest. "Postjudgment interest is mandatory under 28 U.S.C. § 1961 and should therefore be awarded." *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*, 735 F.3d 993, 1007 (8th Cir. 2013) (cleaned up).

> Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment.

28 U.S.C. § 1961(a). Interest is "computed daily to the date of payment . . . and shall be compounded annually." *Id.* § 1931(b).

Plaintiff argues the proper interest rate is 5.23%. Defendant (assuming other posttrial motions are denied) agrees with Plaintiff's position regarding the computation of interest. (Doc. 345, pp. 1-2.) Accordingly, Plaintiff is entitled to postjudgment interest from June 20, 2023, to the date the judgment is paid at a rate of 5.23%, computed daily and compounded annually.

### III. CONCLUSION

For the above reasons:

- Defendant's Motion for Decertification of the Class and to Alter or Amend the Judgment, (Doc. 335), is **DENIED**;

---

[12] Plaintiff briefly mentions two other issues. First, he states Defendant should not have been allowed to emphasize there were instances in which policyholders were undercharged because Witt accounted for this in his model. But, again, the jury was tasked with determining damages and, if any, the amount; any undercharges were clearly relevant to that issue. Second, Plaintiff states the Court should not have allowed Defendant's Exhibits 1201 and 1202 to be admitted as substantive evidence under Federal Rule of Evidence 1006. Even if this was error, the Court is not convinced Plaintiff's substantial rights were affected. Importantly, Plaintiff does not dispute the accuracy of the charts, which merely summarized other evidence that was before the jury. In fact, he points only to closing argument. Again, this is not evidence. In these circumstances, the Court is not convinced a new trial would produce a different result.

- Defendant's Renewed Motion for Judgment as a Matter of Law on Count I, (Doc. 336), is **DENIED**;

- Plaintiff's Motion for a New Trial or, in the Alternative, Motion for Additur, (Doc. 333), is **DENIED**; and

- Plaintiff's Motion to Alter or Amend Judgment, (Doc. 334), is **GRANTED**.

**IT IS SO ORDERED.**

 

 

    /s/ Beth Phillips
    BETH PHILLIPS, CHIEF JUDGE
DATE: <u>September 27, 2023</u>    UNITED STATES DISTRICT COURT